# McMANUS v. LYNCH.

STATUTORY CONSTRUCTION; INTESTATE SUCCESSION; STATUTE OF DESCENTS.

1. Where a statute under interpretation here has been for more than a century the rule of inheritance in Maryland and in this District alike, the interpretation uniformly given to the rule by the court of last resort in Maryland will be here given very great weight, in the absence of a different construction by our courts.

2. Under D. C. Code, secs. 940, 950 (31 Stat. at L. 1342, 1343, chap. 854), providing that, where an intestate has no nearer relatives, his real estate shall descend to the descendants of his maternal grandfather "in equal degree equally," the distribution is *per stripes* of the grandfather, and not *per capita*.

3. H died intestate, leaving no issue, brothers, sisters, father, mother, or paternal grandfather, but only descendants of a maternal grandfather, A. A had children, B, C, D, and E, all of whom are dead. B had a child, F. C had a child G. D had a child, the intestate H. E had children, I, J, and K. I died leaving five children. K died leaving a child. Under D. C. Code, secs. 940–950, relating to the descent of intestates' real estate, H's property will be divided as follows: One third to F, one third to G, one third of one third to J, one third of one third to the child of K, and one fifth of one third of one third to each of the five children of I.

No. 1721.   Submitted October 23, 1906.   Decided December 4, 1906.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia overruling exceptions to a report of the auditor distributing the proceeds of the real estate of an intestate. 　　　　　*Affirmed.*

The COURT in the opinion stated the facts as follows:

In this District, Fannie L. Berry, a widow, died in August, 1904, seised in fee of an estate by purchase in several parcels of real estate. She died intestate, leaving no child or descendant, no brothers or sisters, and no descendant from any brother or sister; no father, no mother, neither grandfather. She did leave more remote relations, the descendants of her grandfather on the maternal side; namely, three first cousins and five children of one first cousin, deceased, and one child of another first cousin, deceased.

This grandfather had one son, Venerando Pullizzi, who died leaving an only son, Venerando Pullizzi, the sole defendant in this cause, and three daughters, Angela King, Agatha Lynch, and Mary P. Develin, the mother of Fannie L. Berry, the intestate, who survived her mother. Angela King died leaving her daughter, Mary Alice King McManus, a grandchild, Edna B. King, sole issue of George W. King, a deceased son of Angela, and five other grandchildren, the issue of Martin E. King, the other deceased son of Angela. Agatha Lynch died leaving a son, Ambrose Sevier Lynch. All of these descendants of the maternal grandfather, save one, were complainants in the original bill for partition by sale of the real estate of the intestate, said Venerando Pullizzi being the sole defendant. The suit, which was amicable, proceeded to a decree and to a sale of the real estate thereunder, and certain proceeds were reported and distributed by the auditor. The auditor's report distributed the proceeds of sale, one third to Ambrose S. Lynch, the son of Agatha Lynch, deceased; one third to the widow and children of Venerando Pullizzi, who died while this proceeding was pending, and who was the son of the first Venerando

Pullizzi, deceased. The remaining one third of the proceeds of sale were distributed among the descendants of Angela King as follows: A third part to the five children of Martin E. King, deceased; a third part to Mary A. King McManus, a first cousin of the deceased; and a third part to the child of George W. King, deceased. The descendants of Angela King excepted to the auditor's report, claiming that his distribution should have been as follows: One fifth to each of the three living first cousins of the intestate, and, *per stirpes,* one fifth each to the two sets of second cousins. The court below sustained the auditor's report, and the appellants, the descendants of Angela King, appealed from the decree overruling their exception to the auditor's report. The appellees are Ambrose S. Lynch and the widow and two children of Venerando Pullizzi, who died *pendente lite.*

*Mr. Wm. G. Johnson, Mr. J. M. Carlisle,* and *Mr. Roberts Walker* for the appellants.

*Mr. Jesse H. Wilson, Mr. Jesse H. Wilson, Jr.,* and *Mr. John Ridout* for the appellees.

Mr. Justice McComas delivered the opinion of the Court:

The appellants contend that the court below erred in distributing this estate *per stirpes* of the maternal grandfather of the intestate, and therefore in dividing the estate into thirds and so distributing it; and, again, that the court erred in not distributing the intestate's estate *per capita* among the first cousins and among the second cousins *per stirpes* of their parents, and therefore in not dividing the estate into fifths, and so distributing it. The determination of these questions depends upon the construction of the Code, secs. 948–950, and 955 [31 Stat. at L. 1342, 1343, chap. 854], relating to an intestate's estate acquired by purchase.

Chapter 21 of the Code, *Descents,* is really the re-enactment of the Maryland act of 1786, chapter 45, an act to direct

descents. Several provisions not material here are added by the Code, and the sections just mentioned are the re-enactment of the Maryland law, with immaterial verbal variations. This statute to direct descents remained the law of this District for more than a century and until Congress passed the Code, in 1902. This law of descents provides that, on the death of a person seized in fee of lands and intestate thereof, the same shall descend in fee to the intestate's kindred in the following order: First, to his child or children and their descendants equally; and, failing these, the statute provides a course of descent *where the estate descended from the father,* and next a course of descent *where the estate descended from the mother,* and, thirdly, provides that *if the estate was acquired by the intestate by purchase,* and there being no child of such intestate, the estate descends in order, first to his brothers and sisters of the whole blood, and their descendants, next to the brothers and sisters of the half blood and their descendants, next to the father, next to the mother, next to the grandfather on the part of the father, and next to the descendants of such grandfather in equal degree equally, and then to the grandfather on the part of the mother, and, if no such grandfather, then to his descendants in equal degree equally; and so on without end. Secs. 940 to 950, inclusive. And sec. 955 (act of 1786, sec. 4) provides: "If in the descending or collateral line any father or mother shall be dead, leaving a child or children, such child or children shall, by representation, be considered in the same degree as the father or mother would have been if living, and shall have the same share of the estate as the father or mother if living would have been entitled to, and no more; and in such case, when there are more children than one, the share aforesaid shall be equally divided among such children." In the case now before us, on account of the failure of nearer heirs this intestate's realty goes "then to the grandfather on the part of the mother, and, if no such grandfather, then to his descendants in equal degree equally." The counsel for the appellants in an ingenious argument contended that, under the Code, the identity of the persons who can take is ascertained through the common

ancestor, and, when once identified, the described kindred take as immediate heirs of the intestate; that where the heirs are ascertained by searching along the lines indicated by the Code until some *living* kindred be found, then the estate vests in all the living kindred of that degree *"equally,"* that is *per capita,* and by representation in the *"child or children"* of any deceased *"father or mother"* of the *same* degree as the *living* kindred designated by the Code. Counsel insist that when this statute designates a class as inheritors that class takes in its own right, while children of deceased members of the class take by representation.

The statute we must here interpret has been for more than a century the rule of inheritance in Maryland and in this Federal district alike. The interpretation uniformly given to it by the Maryland court of appeals, in the absence of a different construction by the courts of this District, is of very great weight. In *Maxwell* v. *Seney,* 5 Harr. & J. 25, where collateral relations contended for the lands of an intestate which he acquired by purchase, it was argued, as it is now argued in this case, that in the collateral line only those in equal degree, and none more remote than the children of brothers and sisters, can take, and that they must take *per capita,* and not *per stirpes;* but Judge Buchanan said: "Whatever would be the true construction of that branch of the act if it stood alone, the 4th section [in our Code sec. 955], the office of which is to ascertain who shall be considered as standing in the same degree, and the proportions to which they shall be respectively entitled, furnishes an interpretation that cannot be resisted, and is a full answer to any argument that can be drawn from the second section. If none could take but those in the same degree, it would follow that where there are brothers and sisters, and children of a deceased brother or sister, as the brothers and sisters could alone stand in equal degree they would take the whole estate, to the exclusion of the nephews and nieces. But this is obviated by the 4th section of the act, which, if it has any meaning, contemplates and provides for such a case by declaring the children of a deceased father or mother to be

in the same degree, by representation, as the father or mother would have been if living, and giving to them the same share of the estate that their father or mother, if alive, would have been entitled to.   *   *   *   The argument that among collaterals none beyond the children of brothers and sisters can take, however ingenious and .well urged, cannot be sustained. The words 'any father or mother,' in the 4th section of the act, cannot be restricted to the brothers and sisters of the intestate *   *   *   but are unlimited, and must apply to any father or mother in the descending or collateral line, in any, the remotest degree.   Thus, if there be a brother and a nephew, the son of a deceased brother, the nephew, by representation, stands in the same degree with the brother, and will take one half of the estate, being the share to which his father would have been entitled if alive; and if the nephew be dead, leaving a child, that child·is considered, by representation, in the same degree as his father would have been if living, and so on *ad infinitum;* and as the same section directs that where there are more children than one the share of their deceased father or mother, and no more, shall be equally divided among such children, it follows that they must take *'per stirpes,'* and not *'per capita,'* and that was settled in the case of Collier and Stewart."   See *Stewart* v. *Collier,* 3 Harr. & J. 289.

In *McComas* v. *Amos,* 29 Md. 120, 132, Dr. Amos died intestate, seised of lands which he acquired by purchase, leaving only collateral relations, less remote, however, than in the case before us, and the Maryland act of 1820, chap. 191, limited the descent by the proviso "that there be no representation permitted among collaterals after brothers' and sisters' children." Brothers and sisters referred to in this proviso, by the English and Maryland courts have been construed to mean brothers and sisters of the intestate.   In the *Amos Case* the heirs were all in equal degree of relationship to the intestate, and it was contended that, by a correct interpretation of the statute to direct descents, they would inherit and take *per capita,* or in equal portions, and that it is only when they stand in different degrees of relationship to the intestate that they inherit and take *per*

*stirpes,* but Judge Alvey, while admitting the force of such contention that the estate "shall descend to the brothers and sisters of such intestate, of the whole blood, and their descendants, in equal degree equally," held that, in connection with a provision now in our Code (sec. 955), the clause just quoted "must be taken to apply only to the collateral relations of the intestate of a remoter degree than brothers' and sisters' children," for that other section to which he referred (our Code, sec. 955) declares that the child or children *"shall by representation be considered in the same degree as the father or mother would have been, if living, and shall have the same share of the estate as the father or mother, if living, would have been entitled to, and no more."* And Judge Alvey concluded that by reading the two sections together "the rule of representation is made applicable as well to cases where all the parties stand entitled in equal degree of relationship to the intestate, as where they stand in unequal degrees." Judge Alvey, in commenting upon *Maxwell* v. *Seney,* remarked that "the brothers and sisters of the intestate, though they had all died before him, were regarded as the *stirpes,* and the several branches of the descendants of the brothers and sisters could only take the same proportion that their root, whom they represented, would have done, if alive. Whereas, if the theory of the appellees [in the *Amos Case*] be correct the nephews and nieces should have been regarded as the *stirpes,* and the primary division made according to their number." Judge Alvey well says that in the former case the principle of representation was applied without qualification or restriction, and it was the office of the controlling language of the 4th section of the act to direct descents (Code, sec. 955) "to ascertain who shall be considered as standing in the same degree, and the proportions to which they shall be respectively entitled."

The primary object of the Maryland statute to direct descents was to prevent the land of an intestate from descending to the eldest son in exclusion of his brothers and sisters, and to make it descendible to all the children equally, and, where there were no children of the intestate, to make it descend equally among

his collateral relations *per stirpes,* the children being considered by representation in the same degree as the father would have been, if living, "and so on *ad infinitum."*

The representative principle, the principle which allows the children or remoter descendants of a dead person to stand in that person's stead in a scheme of inheritance, was fully adopted in the common law. The Maryland courts naturally recognized it in these cases concerning collateral relations.

In the case before us, the second Venerando Pullizzi takes by representation the same share of the estate as his father, Venerando Pullizzi, a son of the maternal grandfather of the intestate, would have been entitled to, namely, one third; and Ambrose Sevier Lynch, the son of Agatha Lynch, takes the same share that daughter of the maternal grandfather would have been entitled to, namely, one third; and Mary A. K. Mc-Manus, one of three children of Angela King, a daughter of the maternal grandfather, takes one third of the same one third share of the estate her mother, Angela King, would have been entitled to; while the one third of the same one third share, which her brother, Martin P. King, would have been entitled to, passes to his five children, and must be equally divided among such children; and, finally, the one third of the same one third share, to which George W. King, the deceased son of Angela King, would have been entitled, passes to his daughter, Edna B. King, by representation. Therefore the widow and two children of Venerando Pullizzi, and Ambrose Sevier Lynch, first cousins of the intestate, each take one third in the distribution of her estate; Mary A. K. McManus, another first cousin of the intestate, takes one third of one third; the five children of Martin P. King, who are second cousins of the intestate, are entitled to have one third of the same third of the distribution of the intestate's estate divided equally amongst them; and Edna B. King, another second cousin of the intestate, takes the remaining third of the one third by right of representation. The auditor has so distributed this fund, and the learned court below committed no error in ratifying his report. The estate was properly distributed amongst those entitled ac-

cording to the number of *stirpes,* allowing by representation the children of a deceased brother or sister to take the share to which the father or mother would have been entitled, if living, and, where there were more children than one of a particular deceased sister or brother, taking care that such share of a brother or sister be equally divided amongst such children. We agree with the Maryland court that such is the plain reading of the statute.

Appellants' counsel relied upon *Barnitz* v. *Casey,* 7 Cranch, 456, 3 L. ed. 403. In that case Justice Story held that this Maryland statute to direct descents provided for three classes of cases: First, estates descended to the intestate on the part of the father; second, estates descended to the intestate on the part of the mother; third, estates vested in the intestate by purchase, and "not derived from or through either of his ancestors;" and therefore Justice Story held that in the case before him "a descent from brother to brother is not within the statute, and of course is a *casus omissus,* to be regulated by the common law." Justice Story had before remarked that counsel on both sides had argued that the legislature intended to form a complete scheme of descents, and that the court ought not to construe any case to be a *casus omissus* if it could be avoided, but he decided that the case before him was an omission in the statute, and therefore to be regulated by the common law.

The case in 7th Cranch has no application to the question before us. It was decided in 1813. Now, in 1817, Judge Buchanan delivered the opinion in *Hall* v. *Jacobs,* 4 Harr. & J. 256, and, apparently without knowledge of Justice Story's decision in 7th Cranch, considered the same question and reached the same conclusion, for Judge Buchanan said: "This, then, being neither the case of an estate descended to the intestate on the part of the father, an estate descended to the intestate on the part of the mother, nor an estate by purchase, but a descent from brother to brother, it is not within the act of assembly, and is a *casus omissus,* subject to the rules of the common law governing descents." The same Judge Buchanan

in 1820 delivered the opinion in *Maxwell* v. *Seney,* and announced the rule of property we here uphold; and he is the same Judge Buchanan before whom, in 1812, was argued *Stewart* v. *Evans,* 3 Harr. & J. 287, and *Stewart* v. *Collier,* 3 Harr. & J. 289, where the same construction here adopted was first given to the Maryland statute to direct descents.

It is true that in none of the Maryland cases are the collateral relations concerned exactly in the same degrees as are the collaterals of the intestate in the case before us, yet it is also true that in each of those cases the Maryland court was required, where the intestate's seisin was by purchase, to interpret a clause of similar import to the one we here interpret; namely, "then to the grandfather on the part of the mother, and, if no such grandfather, *then to his descendants in equal degree equally."* And in each case, though the degree of collateral relationship differed, that court construed a clause in other respects of like import with the one we have just quoted, and determined that sec. 4 of act of 1786, chap. 45, identical with our Code, sec. 955, qualified and explained provisions like the one we last quoted. The Maryland cases all maintain that the rule of *per capita* distribution, here urged by the appellant, ignores the rule of representation prescribed by the law, and, in the words of Judge Alvey, "would not only do violence to the language employed, but would be adopting a principle that the legislature has shown a manifest design to exclude."

The judgment of the learned court below must be affirmed. In a case like this, however, we think all of the costs of this appeal should be paid out of the remainder of the fund hereafter to be distributed.				*Judgment affirmed.*